**FIRST NATIONAL REALTY CORPORATION, a corporation, Appellant,**

v.

**Joseph G. OLIVER and Armentia Oliver, Appellees.**

**No. 1975.**

Municipal Court of Appeals for the District of Columbia.

Argued May 20, 1957.

Decided July 25, 1957.

Herman Miller, Washington, D. C., for appellant.

Wilbur W. Sewell, Washington, D. C., for appellees.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Appellant (hereinafter called landlord) leased to appellees (hereinafter called tenants) a dwelling house on a monthly basis commencing on the 10th of the month. The tenants paid the first month's rent in advance and took possession on the 10th. About a week later they vacated without notice. The landlord brought this action for an additional month's rent because of the tenants' failure to give the required thirty days' written notice of their intent to vacate.[1] The tenants denied liability and counterclaimed for the amount of the first month's rent. The trial court denied the landlord's claim and granted the tenants' counterclaim. The landlord appeals.

With respect to the landlord's claim we think the trial court was right. Although the tenants failed to give the required notice, the evidence showed that the landlord re-rented the premises on the 11th day of the following month to another

1. Code 1951, § 45–902.

tenant, and consequently the failure to receive notice caused the landlord no loss. While a tenant who fails to give notice may be liable for another month's rent,[2] the purpose of the Code section is not to penalize the tenant but to give the landlord an opportunity to find a new tenant.[3] Where failure to give notice results in no loss to the landlord, a requirement that the tenant nevertheless pay an additional month's rent would penalize the tenant and unjustly enrich the landlord. This was not the intention or purpose of our Code section.

With respect to the tenants' counterclaim for the month's rent paid by them, their claim is apparently based on the theory that they were induced to enter into the lease by misrepresentation and that by reason thereof the lease was voidable at their option. Briefly stated, their claim is that the premises were represented as being inhabitable whereas in fact they were uninhabitable. To support this claim there was testimony that before signing the lease they inquired of the landlord if there were any unpaid gas or water bills and were told there were none; and that upon taking possession they found both the water and gas had been cut off, presumably because of unpaid bills. Two days later the landlord paid the delinquent water bills and water was turned on. The gas was never turned on and after staying in possession "about a week," the tenants vacated.

■ It may first be observed that the rule in this jurisdiction is that upon the letting of a house there is no implied warranty that the premises are fit for the occupancy intended;[4] and second, that the lease in the instant case required the tenants to pay for their water, gas and electricity. However, the tenants argue that

there was an express representation that water and gas had not been discontinued because of unpaid bills, and that this in effect was a warranty that the premises were not uninhabitable because of lack of these services.

With respect to the gas, the testimony of a gas company official was that the tenants could have obtained gas service by either a showing of proper credit or the making of a deposit, and that such service was in no way dependent on payment of unpaid bills of former tenants. It can hardly be claimed that the landlord was required to guarantee the tenants' credit or make a deposit for them. Indeed, in their brief here the tenants appear to have abandoned their claim that they were entitled to void the lease because of lack of gas service.

■ The tenants, however, argue that lack of water service rendered the house uninhabitable, that the premises lacked water service because of the landlord's failure to pay delinquent water bills, and that the landlord's assurance to them that there were no delinquent water bills constituted a material misrepresentation of the condition of the premises, justifying them in voiding the lease. Whatever merit there may be in this argument, we think the tenants waived any rights they had to insist that lack of water service freed them from liability under the lease. According to their own testimony when they discovered that water service was lacking they nevertheless took possession and water was turned on "several days later." The testimony of the landlord was that the tenants took possession on the 10th, that it did not know the water was cut off, and when on the 12th the tenants notified it there was no water service, it promptly paid the bill and the water was turned on. At

2. See Miller v. Plumley, D.C.Mun.App., 77 A.2d 173; Elliott v. Crawford, D.C.Mun. App., 118 A.2d 518; Williams v. Tencher-Walker, D.C.Mun.App., 125 A.2d 58.

3. Keuroglian v. Wilkins, D.C.Mun.App., 88 A.2d 581.

4. Hughes v. Westchester Development Corporation, 64 App.D.C. 292, 77 F.2d 550; Hariston v. Washington Housing Corporation, D.C.Mun.App., 45 A.2d 287.

any rate, the tenants admitted that the water service was on for several days before they vacated. In view of this, the tenants cannot say they vacated because of lack of water service. Had they refused to take possession because of lack of service or vacated before water was turned on, we would have a different situation.

Our conclusion is that the tenants vacated without right and have no standing to claim refund of the rent.

The judgment denying recovery to the landlord on its claim is affirmed. The judgment allowing recovery to the tenants on their counterclaim is reversed.